IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02728-NRN

L.A.R.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**N. Reid Neureiter**
**United States Magistrate Judge**

 The government determined that Plaintiff L.A.R.[1] was not disabled for purposes of the Social Security Act. AR[2] 25. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #6.

## Standard of Review

 In Social Security appeals, the Court reviews the decision of the administrative law judge (ALJ) to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v.*

---

 [1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

 [2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkts. ##7, and 7-1 through 7-13.

*Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

Plaintiff initially filed a Title II application for disability insurance benefits on September 27, 2017, alleging a disability onset date of June 18, 2013. The initial claim was denied on September 19, 2018. AR 167–81. Thereafter, Plaintiff filed a request for

hearing on September 25, 2018. AR 216–17. The hearing was held on November 18, 2019 and the ALJ issued an unfavorable decision. AR 98–166, 182–201.

Plaintiff requested a review of this unfavorable decision. AR 421–23. On July 28, 2020, the Appeals Council vacated the ALJ's decision because the State agency psychological consultant's opinion, which the ALJ had relied upon, was not properly certified. AR 202–07.

The ALJ held a second hearing on April 12, 2021. AR 34. On April 23, 2021, the ALJ again found that Plaintiff was not disabled. That decision is now before the Court for review.

In his April 23, 2021 decision, at the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the severe impairments of major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), fibromyalgia with chronic fatigue, mild degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and bilateral hip mild osteoarthritis. AR 14–15.

The ALJ found at step three that Plaintiff does not have an impairment or combination of impairments that meets the severity of the listed impairments in the

---

[3] The Social Security Administration ("SSA") uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the SSA has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

regulations. After making this finding, the ALJ found that Plaintiff has the residual

functional capacity ("RFC") to perform:

> a range of light work as defined in 20 CFR 404.1567(b).[4] The claimant is able to lift or carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk approximately four hours, and sit approximately six hours, in an eight-hour workday. She can occasionally climb stairs and ramps. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, kneel, and crawl. She can have occasional exposure to extreme cold and occasional exposure to excessive vibration. She should never work at unprotected heights or around moving and/or dangerous machinery. She can tolerate moderate noise levels. She needs to avoid bright lights (i.e., lights in excess of retail and office-type lighting). She is limited to perform work that consists of only simple, routine, repetitive tasks. She can have occasional contact with supervisors. She can maintain concentration, persistence and pace for extended periods of two-hour segments during a normal workday with normal breaks in work that consists of no more than simple, routine, repetitive tasks. The work does not require that the claimant maintain a production-rate pace.

AR 21–22.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant

work as a logistics officer, company commander. But the ALJ then found at step five

that, in light of Plaintiff's age, education, work experience, and RFC, there were jobs

that existed in significant numbers in the national economy that Plaintiff can perform.

---

[4] Under 20 C.F.R. § 404.1567(b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Accordingly, Plaintiff was deemed not to have been under a disability from June 11, 2018 through December 2, 2020, the date of the decision. AR 32.

**Analysis**

The critical issues on appeal in this case arise from the ALJ's evaluation and discussion of Plaintiff's fibromyalgia. Plaintiff argues that while the ALJ found that Plaintiff's fibromyalgia was a severe medically determinable impairment at step 2, he failed to apply the correct legal standards when fashioning the RFC because he (1) did not properly evaluate Plaintiff's subjective complaints of pain and thus did not account for it in the RFC, and (2) improperly evaluated medical opinion evidence related to Plaintiff's fibromyalgia. As a result, the ALJ's findings at step 5 of the sequential evaluation process are not supported by substantial evidence, and the matter must be remanded for further proceedings.

For the reasons set forth below, the Court agrees.

## I. The ALJ did not apply the correct legal standards when evaluating Plaintiff's subjective complaints of pain and did not support his findings with substantial evidence.

The ALJ erred by relying too heavily on the absence of objective evidence of physiological abnormalities related to Plaintiff's fibromyalgia. Fibromyalgia is a complex, chronic condition "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *See* SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012) (SSR 12-2p).

> Fibromyalgia, previously called fibrositis, is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue."

> *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1 (8th Cir. 2003). The disease is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports and other symptoms." *Benecke*, 379 F.3d at 590. Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." *Green–Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir.2003); *see also Brosnahan*, 336 F.3d at 678 (objective medical evidence of fibromyalgia includes consistent trigger-point findings). Fibromyalgia can be disabling. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998).

*Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (unreported).

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Id.* (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

With respect to Plaintiff's fibromyalgia, the ALJ explained:

> The Claimant alleges fibromyalgia. A medical source statement in the record reports 12 of 18 tender points (16F/2). However, there is no objective evidence of tender point exams. Treatment notes reflect that the claimant takes gabapentin for pain. MRI results showed no acute pathology that would cause the claimant's pain in May of 2016 (11F/117). She was advised to start melatonin for sleep and to improve fibromyalgia symptoms.

AR 18.

The Court is puzzled by this finding, which appears to suggest that Plaintiff has not provided sufficient objective evidence of the diagnosis of her condition. However, Dr. Scheuller was asked to provide a Fibromyalgia Residual Functional Capacity Questionnaire. The form asked "Indicate the number of tender points your patient has on an 18-point tender point exam." Dr. Scheuller indicated that Plaintiff had 12 tender

points. AR 2093. The form goes on to ask: "Identify the *clinical findings*, laboratory and test results that show your patient's medical impairments." Dr. Scheuller wrote "clinical exam + 12/18 tender points." *Id.* Further, Dr. Grillo filled out a Physical Residual Functional Capacity Questionnaire. *See* AR 2098. He indicated fibromyalgia as one of Plaintiff's diagnoses and, when asked to "identify the clinical findings and objective signs," he wrote, in part, "fibromyalgia tender points x 12." *Id.* These are summaries of two doctors' medical opinions, and both indicate that the doctors performed clinical exams and found 12 tender points. This constitutes objective medical evidence. And, as previously set forth, *at least* 11 tender points are required. Thus, it appears that Plaintiff did, in fact, present objective medical evidence to support her fibromyalgia diagnosis. If the ALJ was not convinced of these medical findings, he could have inquired further of Plaintiff or her counsel or otherwise sought clarity concerning Dr. Scheuller and Dr. Grillo's tender point findings. A review of the transcript reveals he made no such inquiry.

The Commissioner has also adopted and defended the ALJ's viewpoint, arguing that the ALJ found that Plaintiff's fibromyalgia "was not objectively verified by the sufficient number of tender points on examination." Dkt. #13 at 11–12. The Commissioner argues that, despite finding that Plaintiff did not have sufficient tender points on exam (which appears to be a mistaken finding), the ALJ nevertheless found that Plaintiff's fibromyalgia was a severe medically determinable impairment. Thus, "even if the ALJ somehow erred in pointing out that the record lacked the requisite fibromyalgia tender points for Plaintiff's fibromyalgia to be a [medically determinable impairment], any error was harmless because the ALJ discussed Plaintiff's fibromyalgia

during the residual functional capacity assessment." The Court, however, has serious concerns that the ALJ's mistaken finding with respect to Plaintiff's diagnosis tainted the rest of the analysis. Indeed, it appears the ALJ improperly considered both Plaintiff's pain and the medical evidence related to her fibromyalgia, rendering the RFC inadequate. This is indicated by the ALJ's repeated references to the lack of "objective evidence," including MRIs and imaging reports. *See, e.g.*, AR 18, 20.[5] "Since fibromyalgia only manifests itself through clinical symptoms, there are no laboratory tests that can confirm the diagnosis." *Romero v. Colvin*, 563 F. App'x 618, 621 (10th Cir. 2014) (citing *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 627 n. 1 (10th Cir. 2003)). "Thus, to the extent that the ALJ discounted [a claimant's] fibromyalgia because of benign medical test results, she appears to have erred." *Romero*, 563 F. App'x at 621. This is the exact error that appears in this case, and it was not harmless.

The unpublished case of *Tarpley v. Colvin*, 601 F. App'x 641 (10th Cir. 2015), does not change this analysis. The Commissioner argues that *Tarpley* stands "for the proposition that the Tenth Circuit has recognized that the ALJs may consider objective findings to determine physical limitations caused by fibromyalgia." (Dkt. #18 at 2). In *Tarpley*, the Tenth Circuit explained: "Although the existence of fibromyalgia may not be determinable by objective medical tests, this court has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed." *Tarpley*,

---

[5] It is unclear to what extent the ALJ relied on the absence of test results to evaluate Plaintiff's fibromyalgia, as opposed to her other serious conditions, such as degenerative disc disease and osteoarthritis. *See* AR 18–21. Rather than mitigate the error, this compounds it. If the ALJ referred only to the absence of objective records related to those other conditions, then his opinion is devoid of almost any discussion of her fibromyalgia symptoms.

601 F. App'x at 643 (citations omitted). Certainly, the physical limitations imposed by the Plaintiff's condition can be objectively analyzed, but an ALJ cannot rely solely on the *absence* of objective medical imaging and other diagnostic reports when evaluating a claimant's fibromyalgia. Indeed, in *Tarpley*, the Tenth Circuit proceeded to note Ms. Tarpley's other medical records, her daily activities, the effect of medication on her condition, and the medical opinions.

This Court does not suggest that the ALJ cannot objectively analyze Plaintiff's limitations caused by fibromyalgia. However, an ALJ must rely on more than a lack of objective supporting evidence when considering a claimant's fibromyalgia. *See Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [Plaintiff's] fibromyalgia."). The ALJ here failed to do so. Specifically, the ALJ failed to properly analyze the existence of many other treatment records noting Plaintiff's fibromyalgia, her reported flares and pain levels, her varying responses to medications, and the adequate findings of tender points. *See Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[T]he Act makes clear that the Secretary must consider all relevant medical evidence of record in reaching a conclusion as to disability."). Further, the ALJ failed to properly analyze several medical opinions, rendering inadequate the RFC and the ALJ's findings at step 5. Specifically, the ALJ committed legal error when he entirely failed to address supportability with respect to the state agency consultant's medical opinion, and his findings concerning the medical opinion of Dr. Scheuller, Plaintiff's treating provider, are not supported by substantial evidence.

**II. The ALJ failed to properly evaluate plaintiff's pain.**

The ALJ explained that, after considering the evidence, he found "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence . . . ." AR 18.

Plaintiff argues that the ALJ's evaluation of her pain and fatigue was improper because the ALJ failed to explain which symptoms he found consistent or inconsistent with her complaints, and also failed to explain how his evaluation of Plaintiff's symptoms supported his conclusion, particularly with respect to her complaints of pain and fatigue related to fibromyalgia. Further, Plaintiff believes that the analysis of Plaintiff's daily activities mischaracterizes the evidence. The Court agrees.

Under Tenth Circuit case law, an ALJ must follow a three-step process when assessing subjective complaints of pain:

> A disability claimant's complaints of disabling pain are evaluated using the three-step analysis set out in *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987). Under *Luna* an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary,* 695 F.3d at 1166–67. The SSA will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3) to evaluate the intensity, persistence, and limiting effects of an individual's symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8 (listing symptom evaluation factors) (SSR 16-3p). These factors include:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*

"Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quotations and alteration omitted). Factors relevant to the credibility determination include the claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3) (listing the other factors relevant to symptoms an ALJ may consider);

SSR 16-3p.

The SSA has issued further guidance concerning the evaluation of

fibromyalgia. With respect to evaluating a claimant's pain, SSR 12-2p explains:

> Once an MDI is established, we then evaluate the intensity and
> persistence of the person's pain or any other symptoms and determine
> the extent to which the symptoms limit the person's capacity for work. If
> objective medical evidence does not substantiate the person's statements
> about the intensity, persistence, and functionally limiting effects of
> symptoms, we consider all of the evidence in the case record, including
> the person's daily activities, medications or other treatments the person
> uses, or has used, to alleviate symptoms; the nature and frequency of the
> person's attempts to obtain medical treatment for symptoms; and
> statements by other people about the person's symptoms. As we explain
> in SSR 96-7p, we will make a finding about the credibility of the person's
> statements regarding the effects of his or her symptoms on functioning.
> We will make every reasonable effort to obtain available information that
> could help us assess the credibility of the person's statements.

*Id.* at *5. When the objective medical evidence does not substantiate the person's

subjective complaints of pain, consideration of the factors identified in SSR 12-2P

becomes especially important.

The Court finds that the ALJ's determinations concerning Plaintiff's subjective

complaints of pain are not supported by substantial evidence. The ALJ examined

Plaintiff's daily activities and found that she Plaintiff has a "good level" of them. He

explained:

> The claimant testified that she has not been able to work since 2013 due to
> a combination of her physical and mental impairments. However, the
> Claimant went to Africa on safari in 2013 after discharge from military for
> one week. In addition, in 2015, the claimant went to Israel/Jordan for two
> weeks and immediately after went on a two-week Mediterranean cruise.
> Further, the claimant volunteered at her church four days/week for two
> hours a day doing administrative office type work and some cleaning work.
> She also goes to Church weekly on Sundays and has been going to bible
> study one day a week on Wednesdays. The Claimant is very committed to

volunteering with the Church. Per the claimant's testimony, she and her husband (who is disabled) go out to eat almost daily. The claimant is able to drive and do all activities of daily living around house and help her husband around house (Testimony). The claimant's function report and third party function report also reflect a good level of daily activities (3E; 7E).

After a close inspection of the record, the Court finds that the ALJ's analysis of the subjective complaints of pain mischaracterizes the record. For example, though Plaintiff does attend church on a regular basis and is passionate about her volunteer work with the church, Plaintiff explained during her testimony that she is unable to perform her volunteer work about four times a month due to her physical and mental ailments. Additionally, Friar Dennis J. Schulte, who oversees Plaintiff's work at the church, described that Plaintiff's "days and hours are intermittent due to physical reasons such as severe fatigue, pain and/or weakness." AR 596.

Further, the ALJ's reference to the function reports and testimony with a broad conclusion that Plaintiff is able to "do all of the activities of daily living around house and help her husband around house," mischaracterizes the evidence. In Plaintiff's function report (which is actually Exhibit 5E of the hearing),[6] she explains that she is usually bedridden, but on good days she is able to perform light housework. AR 512–19. She has pets, but her spouse helps to take care of them. On good days, she will clean the litter box. She occasionally cooks, but the meals are very simple. She grocery shops only twice a month for about an hour.

---

[6] Plaintiff argues, in part, that the ALJ mischaracterized the evidence by citing to Exhibit 3e, which does not discuss daily activities. *See* Dkt. #10 at 22. The Commissioner, however, argues that this is merely a scrivener's error, and that the ALJ clearly meant to refer to Exhibit 5E. *See* Dkt. #13 at 14 n.4. The Court agrees that this typographical error, alone, does not constitute harmful error.

Plaintiff's husband describes that she is bedridden more than half of the days in a month. On days she is not bedridden, she attempts chores. He writes that she "cooks on days she is functional" and the meals she prepares are simple. They often eat fast food when she is unable to cook. Her husband also reports that Plaintiff grocery shops once every two weeks for about 45 minutes. AR 528–38. The ALJ can disregard this evidence if he chooses, but he must explain why; he cannot cherry-pick only those facts that conform to his determination. Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (internal citations and quotations omitted).

The Court also finds the ALJ's reliance on Plaintiff's travel to discount her pain peculiar. The ALJ is, of course, entitled to consider Plaintiff's travel. But two trips, taken in 2013 and 2015 (and none since), hardly seem to be evidence of a "good level" of activity, especially in light of the other mischaracterizations of the evidence. Moreover, in reviewing the record and attempting to follow the ALJ's line of reasoning, the Court found that the entire line of questioning related to Plaintiff's travel seems to relate to her mental limitations, rather than her physical ones.

Specifically, during the Hearing, the ALJ heard testimony from Dr. Carver, a clinical psychologist who was called to testify regarding Plaintiff's mental health and related limitations. *See* AR 51–52. The ALJ asked Dr. Carver about Plaintiff's week-long vacation in 2013, and her vacations to Israel and Jordan, followed by a two-week Mediterranean cruise, her volunteer work and church attendance, and the fact that she

and her husband go out to eat daily. Dr. Carver testified that these activities indicate only a mild impairment in adaptation. AR 67–68. There was no discussion of what these vacations might indicate in terms of Plaintiff's physical activity and her pain levels. To suggest that Plaintiff does not suffer debilitating pain based on these vacations, without more, is too great an inferential leap.

The Court also notes that Dr. Carver seemed to agree that Plaintiff could suffer from pain. When Plaintiff's counsel asked whether the record supported that Plaintiff has "good days and bad days", Dr. Carver responded: "*It certainly supports that from a physical standpoint.*" AR 77 (emphasis added). Any physical limitation accounting for Plaintiff's "bad days" is not addressed anywhere in the RFC analysis, particularly with respect to Dr. Carver's opinion. This makes sense given that he is clinical psychologist and not the best source to comment on physical limitations. Still, the fact remains that Dr. Carver, who the ALJ found persuasive, admitted in his hearing that testimony that Plaintiff had good and bad days from a physical standpoint. This further demonstrates the need for the ALJ to address Plaintiff's complaints of pain and any physical limitations her serious condition might cause.

Because of the defects described above, the Court is unable to follow the ALJ's reasoning with respect to Plaintiff's complaints of physical pain. The ALJ included no discussion of the Plaintiff's good days and bad days, physically, and how they should be accounted for, even though such complaints are common with claimants suffering from fibromyalgia. They should be considered. Though the ALJ generally referenced Plaintiff's activity reports, (AR 20), he mischaracterized their contents. An ALJ need not explain every shred of evidence in the record, but he cannot simply ignore those that

do not support his position. Further, there is no discussion of several factors outlined in SSR 12-2p, including the location, duration, frequency, and intensity of pain or other symptoms and factors that precipitate and aggravate the symptoms.

Accordingly, the Court finds it appropriate to remand this case so that the ALJ properly evaluates Plaintiff's diagnosis of fibromyalgia and Plaintiff's subjective complaints of pain pursuant to SSR 12-2p and SSR 16-3p.

### III. The ALJ erred in weighing the medical opinions.

Effective March 27, 2017, the regulations governing the procedures and standards for evaluating evidence, including medical source opinions and prior administrative medical findings, changed. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Plaintiff initially filed her claim in September 2017, the ALJ applied the revised regulations.

Under the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical

evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

Plaintiff argues that ALJ erred in analyzing the medical opinions of the state agency medical consultant, Dr. Stevick, and Plaintiff's primary care physician, Dr. Schueller. The Court agrees.

With respect to Dr. Stevick, the ALJ stated:

> The opinion of the State agency medical consultant has been considered and found persuasive. The consultant limited the claimant to a light exertional level with additional postural and hazard limitations. The consultant's opinion is generally consistent with the weight of evidence, including physical exams and imaging reports. The undersigned notes that the State agency medical consultant is familiar with the regulations under which the disability determinations are made.

AR 20 (internal citations omitted).

This analysis fails to analyze the supportability of the consultant's medical opinion.[7] There is no reference to the "diagnostic techniques, data collection

---

[7] Dr. Stevick's medical opinion is found at AR 167, 176–77.

procedures/analysis, and other objective medical evidence" that Dr. Stevick relied on. *See Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021). A reader with no previous knowledge of Plaintiff's record would have no information regarding how the doctors reached the conclusions which the ALJ found "persuasive," as the ALJ did not discuss the critical objective medical evidence underlying these medical opinions as required.

The Commissioner concedes that the ALJ did not make any findings concerning supportability, but argues that such error is harmless because Dr. Stevick's prior administrative medical findings addressed all of the relevant factors in 20 C.F.R. § 404.1513(a)(5).

The Court does not agree with the Commissioner's position, which ignores the fact that prior administrative medical findings are still subject to the mandates of 20 C.F.R. § 404.1520c. Failure to follow the regulations is not harmless error. While the new regulations are plainly "less demanding than the former rules governing evaluation of medical source opinions . . . 'they still require that the ALJ provide a coherent explanation of her reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *4 (E.D. Mich. Aug. 13, 2021) (citations omitted). The regulations guarantee claimants a certain level of process that cannot be discounted by the substantial evidence test alone. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009). Even if the Court "were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004)). As the Sixth Circuit has

explained: "recogniz[ing] substantial evidence as a defense to non-compliance with [the regulations] would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action . . . found to be . . . without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (quoting Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001)).

Plaintiff also argues that the ALJ's reason for discounting Dr. Scheuller's opinion is not based on substantial evidence. The Court agrees.

With respect to Dr. Schueller, the ALJ found:

> The form completed by H. Samuel Schueller, MD, is not persuasive. There is no basis to support extreme limitations given. Dr. Scheuller's own treatment notes do not support severe disabling pain 5 to 10 times per month. In addition, physical exams and imaging reports are not consistent with totally disabling pain. The record reflects largely normal physical exams, and the claimant often denies back and other symptoms on review of symptoms.

As previously discussed, fibromyalgia is a disease of elimination that is not affirmatively diagnosed via objective tests. To the extent the ALJ relies solely on the absence of objective evidence demonstrating physiological abnormalities to discount Dr. Scheuller's opinion as to Plaintiff's fibromyalgia and related pain, he has erred.[8] Moreover, upon review of the records, the ALJ's statement that claimant often denies back pain and other symptoms mischaracterizes the evidence. Moreover, even if Plaintiff denies back pain, fibromyalgia is not limited to the back.

---

[8] The ALJ discounted the opinion of Dr. Grillo for the same reason. However, because Plaintiff did not raise this issue in her opening brief, any argument as to the ALJ's findings concerning Dr. Grillo's medical opinion is waived.

For example, the ALJ cites to Exhibit 11F/119. Though this page does not specifically indicate back pain, it does state earlier in the medical record for that same date that Plaintiff's generalized pain is at a 5 out of 10. *See* AR 1566–68. The record also indicates that she presented to the doctor that day for "an acute appointment complaining of fatigue and chronic pain." AR 1566. The ALJ also cites Exhibit 11F/125. Though this page does not indicate back pain, it notes "muscle aches and pain localized to one or more joints Bilateral hips." AR 1574. Further, the beginning of this exhibit notes that the Plaintiff presented for "acute appointment complaining of *worsening lower back pain*, now radiating into buttocks and hips B/L, and increasing LE weakness when standing and leading to several falls on stairs and uneven surfaces." AR 1572 (emphasis added). And, contrary to the ALJ's representation, 11F/134 does indicate back pain. AR 1583. This same record says that the pain is more prominent in the left side, and more in the hip. *Id.* Plaintiff reported "having chronic pain in both low back and neck. Report of radiating pain from left side of low back into glue region." *Id.* Plaintiff rated her pain at a 5/10 and stated the pain increased to an 8/10 with aggravation such as bending or standing. *Id.* Exhibit 11F/152 also indicates back pain. AR 1601. These are just some examples of how the ALJ mischaracterized the record, and the Court will not belabor the point. The record is replete with references to chronic pain, both in the exhibits that the ALJ cited as having no complaints of pain and in others that the ALJ did not cite. The cherry-picking and misrepresentation of the evidence renders the ALJ's findings about Dr. Scheuller's medical opinion unsupported.

## **Conclusion**

Based on the foregoing, it is hereby ORDERED that this case is REVERSED AND REMANDED for further proceedings consistent with this Order.

For clarity, the Court offers no opinion regarding the ALJ's ultimate determination of whether Plaintiff is disabled. Any finding of disability, however, must apply the appropriate legal standards and be supported by substantial evidence.

Dated this 20th day of September, 2022.

BY THE COURT:

_____
N. Reid Neureiter
United States Magistrate Judge